Robert F. McCauley ( SBN 162056)
robert.mccauley@finnegan.com
Jacob A. Schroeder (SBN 264717)
jacob.schroeder@finnegan.com
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, LLP
3300 Hillview Avenue
Palo Alto, CA  94304-1203
Telephone:     (650) 849-6600
Facsimile:     (650) 849-6666

*Attorneys for Petitioners*
Anoto AB, Livescribe, Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Anoto AB, Livescribe, Inc., | CASE NO. |
| Petitioners, | **EMERGENCY NOTICE OF PETITION AND PETITION TO CONFIRM ARBITRATION ORDER** |
| v. | |
| LeapFrog Enterprises, Inc., | |
| Respondent. | |

# NOTICE OF PETITION AND PETITION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on _____, 2016, at _____ a.m., in Courtroom ____ of the United States District Court for the Northern District of California, Petitioners Anoto AB and Livescribe, Inc. (together, Anoto) will petition the Court, pursuant to 9 U.S.C. § 207, for an order confirming a binding order rendered pursuant to the Arbitration Rules of the Arbitration Institute of the Stockholm Chamber of Commerce by a duly appointed Arbitrator on October 3, 2016 (the "Emergency Order") against Respondent LeapFrog Enterprises, Inc., and for entry of judgment thereon.

This petition is based upon this Notice; the accompanying Memorandum of Points and Authorities; the Declaration of Jacob A. Schroeder; any matters of which the Court may take judicial notice; and such other evidence and arguments as may be presented on this petition.

## RELIEF SOUGHT

Anoto seeks an order from this Court (i) confirming the Emergency Order of the Swedish arbitrator and (ii) entering judgment against LeapFrog in accordance with the Emergency Order, including that LeapFrog deliver certain electronic components (called "Dotpos ASICs" or "Dotpos units") to Livescribe on the terms set out in Purchase Orders 1-3 no later than November 23, 2016, and that LeapFrog deliver Dotpos units to Anoto on the terms set out in Purchase Order 4 no later than January 5, 2017.  In particular, the Emergency Order:

> (a) orders LeapFrog to deliver Dotpos ASICs to Livescribe on the terms set out in POs 1-3, save for that the term for delivery shall be within sixteen (16) weeks from 3 August 2016, *i.e.*, no later than 23 November 2016;
>
> (b) orders LeapFrog to accept PO 4 in writing within four weeks as from 15 September 2016 and further, in accordance with Paragraphs 5.6 and 7.6 of the Agreement, to use its best commercial efforts to ensure delivery of the ordered Dotpos ASICs to Anoto within a maximum of twelve (12) weeks from the date of such acceptance; and
>
> (c) orders that both (a) and (b) above be subject to [Anoto] prepaying the total purchase price for all units of Dotpos ASICs under POs 1-4, such prepayments to be made within five (5) business days from (i) the date of this order under (a) above as regards POs 1-3 and (ii) LeapFrog's written acceptance of PO 4 under (b) above; in all

instances upon receipt of banking details from LeapFrog for such pre-payment.

Won Decl., Ex. B ¶ 118.

## MEMORANDUM OF POINTS AND AUTHORITIES

Respondent LeapFrog is a sole-source provider of certain semiconductor chips that are required by Anoto group companies for the manufacture of all their digital pens. When LeapFrog failed to comply with its contractual obligations to supply Dotpos units, Anoto sought emergency relief from an arbitrator in Sweden, as was required by the supply contract between LeapFrog and Anoto. On October 3, 2016, the Swedish arbitrator ordered, *inter alia*, LeapFrog to supply 54,180 Dotpos units to Livescribe no later than November 23, 2016. LeapFrog subsequently advised Anoto that it will not comply with the arbitrator's order. This puts Anoto in immediate jeopardy of losing customers, being unable to fulfill existing contracts, and losing its business altogether as customers are forced to find other suppliers in an extremely competitive industry. Therefore, to avoid irreparable harm, Anoto brings this emergency action to confirm the Arbitrator's Order, along with an accompanying motion to shorten time for the hearing process on this motion.

Ninth Circuit precedent affirms that Anoto is entitled to confirmation of the Emergency Order pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, known as the New York Convention, and federal law implementing the Convention, 9 U.S.C. § 207. Because Anoto's hardware business is in dire jeopardy if it does not receive the Dotpos units in a timely manner, Anoto respectfully seeks expedited confirmation from this Court.

I.  **FACTUAL BACKGROUND**

In 2005, Plaintiff Anoto entered into a Design, Development and Production Agreement ("Agreement") with Dialog Semiconductor GmbH. Won Decl., Ex. C. The Agreement was later assigned from Dialog Semiconductor GmbH to Digital Imaging Systems GmbH, which in turn assigned it to Respondent LeapFrog in 2010.[1] *Id.* Assignment of Agreement. The Agreement obligates LeapFrog to accept purchase orders from Anoto or Authorized Anoto Licensees for the

---

[1] It is undisputed that LeapFrog acquired Dialog's manufacturing business, and in 2010 Dialog assigned its rights and obligations under the Agreement to LeapFrog. Won Decl., Ex. B ¶ 24.

manufacture and supply of certain integrated circuits to Anoto or Authorized Anoto Licensees (Livescribe is an indirect wholly owned subsidiary of Anoto and is one of the Authorized Anoto Licensees under the Agreement).  *See e.g.*, *id.* ¶¶ 3.1-3.7, Amendment to the Agreement.  These particular integrated circuits are called Dotpos ASICs (or simply, Dotpos units) and are used for image processing in digital pens.  *See, e.g.*, *id.* at 2.  Paragraph 26.3 of the Agreement provides for arbitration before the Stockholm Chamber of Commerce ("SCC") for all disputes arising out of the agreement.  *Id.* ¶ 26.3.

Under the Agreement, LeapFrog is required to deliver Dotpos units no later than 12 weeks from the date of acknowledgment by LeapFrog of a purchase order from Anoto or an Authorized Anoto Licensee.  Won Decl., Ex. B ¶ 6.  Pursuant to established practice between the parties, the applied lead-time has been 16 weeks from when Anoto or an Authorized Anoto Licensee issues the order, thus providing for a four-week maximum time for LeapFrog to accept issued purchase orders and 12 weeks to produce and deliver subsequent such acceptance.  *Id.* ¶¶ 95, 6.  Since the Dotpos units are a necessary and irreplaceable component of the hardware Anoto sells (*see, e.g., id.* ¶ 3.3), a reliable supply of Dotpos units is required for Anoto to stay in business.  From October 2015-January 2016, Livescribe placed three purchase orders totaling 54,180 Dotpos units (POs 1-3), and in September 2016, Anoto placed a fourth purchase order for 100,000 Dotpos units (PO 4).  Won Decl., Ex. B ¶¶ 29-35.  Anoto further agreed to pay for the entire value of each order in advance, thus eliminating any alleged credit risk faced by LeapFrog or its contract manufacturer.  *Id.* ¶ 37.

LeapFrog, which is attempting to leverage other unrelated concessions from Anoto, initially accepted POs 1-3, but subsequently refused to deliver.  LeapFrog also refused to accept PO 4.  Unable to amicably convince LeapFrog to comply with its contractual obligations, Anoto turned to the Agreement itself, which specified that any disputes under the Agreement be resolved by binding arbitration in Sweden, in accordance with the Rules of the Arbitration Institute of the Stockholm Chamber of Commerce.  Won Decl., Ex. C ¶ 26.3.  As delivery of the Dotpos ASIC was, and remains, extremely critical to Anoto and Livescribe, and an ordinary arbitral tribunal would not be constituted in time to provide meaningful relief to Anoto or Livescribe, along with its arbitration request, Anoto and Livescribe sought the appointment of an emergency arbitrator and issuance of an

emergency order under the Rules of the Arbitration Institute of the Stockholm Chamber of Commerce in accordance with the arbitration clause in the Agreement. *See generally* Won Decl., Ex. B. Specifically, Anoto explained that LeapFrog's failure to deliver Dotpos ASICs pursuant to POs 1-4 risked putting Anoto out of business entirely. *See generally* Won Decl., Ex. A; Won Decl., Ex. B ¶¶ 1-6.

An emergency arbitrator was appointed on September 28, 2016, a record was developed, the parties submitted two rounds of briefs, and on October 2, 2016, the emergency arbitrator declared the emergency proceedings closed. Won Decl., Ex. B ¶¶ 10-21. On October 3, 2016, the emergency arbitrator issued an Order on Emergency Decision on Interim Measures. Won Decl., Ex. B. The Emergency Order ordered LeapFrog to, among other things, deliver Dotpos units on the terms set out in Purchase Orders 1-3 to Livescribe no later than November 23, 2016, and that LeapFrog deliver Dotpos units to Anoto on the terms set out in Purchase Order 4 no later than January 5, 2017. Won Decl., Ex. B ¶ 118.[2]

Although Anoto prepaid POs 1-3 as required,[3] LeapFrog flouted the Emergency Order, notifying Anoto that it would not comply (Schroeder, Decl., Ex. B. [Emily Canedo's Oct. 19, 2016 Email]), thereby putting Anoto's entire business at risk. Specifically, as Anoto's CEO Joonhee Won explained in a Declaration submitted in the Emergency Arbitration proceeding (Won Decl., Ex. A) and affirmed in a Declaration submitted herewith (Won Decl. ¶ 3), LeapFrog's failure to comply with POs 1-3 as ordered by the Arbitrator will put Anoto in default on existing orders for tens of thousands of products that require the Dotpos units (Won Decl., Ex. A ¶ 9). And absent a reliable supply of Dotpos units, Anoto is unable to enter into contracts with new and existing customers,

---

[2] Under the Rules of the Arbitration Institute of the Stockholm Chamber of Commerce, the emergency decision ceases to be binding unless arbitration is commenced within 30 days from the date the emergency decision. Such a request for arbitration was filed by Anoto and Livescribe on October 18, 2016.

[3] In compliance with the Emergency Award, Anoto paid LeapFrog in advance for PO's 1-3. Schroeder Decl., Ex. C [Patrick Monaghan's Oct. 19, 2016 Email]. LeapFrog has received the cash, but refuses to honor its delivery date obligations. Schroeder Decl., Ex. B [Emily Canedo's Oct. 19, 2016 Email].

which will impact Anoto's business in the near term, destroy irreplaceable and invaluable customer goodwill and brand equity that Anoto has worked to build for twenty years, and cause a long-term domino effect from which Anoto will very likely be unable to recover. Won Decl., Ex. A ¶ 9. In other words, LeapFrog's failure to comply with the Emergency Order of the arbitrator is likely to drive Anoto into bankruptcy.[4]  *See* Won Decl., Ex. A. ¶ 10.

## II.  JURISDICTION AND VENUE

### A.  Subject Matter Jurisdiction

This Court has original subject matter jurisdiction under 9 U.S.C. § 203 because the Emergency Order arises out of a commercial agreement that falls under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 because the order arises out of a commercial, legal relationship between Anoto and LeapFrog. 9 U.S.C. § 202. Moreover, the Agreement and Emergency Order are not entirely between citizens of the United States, because Anoto is a Swedish company and LeapFrog is a United States company with its principal place of business in Emeryville, California. 9 U.S.C. § 202; *See* Won Decl., Ex. B at 1-2. Further, the Emergency Order was made in Sweden, another contracting state. *LaPine v. Kyocera Corp.*, No. C

---

[4] In disregard of the Emergency Award's requirement that PO 4 be satisfied by January 5, 2017, LeapFrog advised Anoto that delivery of those chips could likely occur as late as March 2017. Schroeder Decl., Ex. B [Emily Canedo's Oct. 19, 2016 Email]. With Anoto's business already jeopardized by LeapFrog's threat to delay performance under POs 1-3, Anoto mitigated its damages by putting PO 4 on hold until clarity is received with respect to POs 1-3. Schroeder Decl., Ex. C [Patrick Monaghan's Oct. 19, 2016 Email [14:19].] Moreover, under the Arbitrator's Emergency Award, Anoto's payment for PO 4 is not due until five business days after LeapFrog confirms acceptance of PO 4, which inherently includes acceptance of the delivery date the delivery date that the Arbitartor also ordered. Won Decl., Ex. B. ¶ 118. Upon this Court's confirmation, it is expected that LeapFrog will issue a proper acceptance, five business days after which Anoto will make payment.

In addition, Anoto tried its best before bringing this action to reach a compromise that, while far from ideal for Anoto, would save Anoto's business. Schroeder Decl., Ex. D [Patrick Monaghan's Oct. 14, 2016 Email [8:46]]; Schroeder Decl., Ex. E [Patrick Monaghan's Oct. 17, 2016 Email [23:03]; Schroeder Decl., Ex. C [Patrick Monaghan's Oct. 19, 2016 Email [6:14]]; Schroeder Decl., Ex. F [Patrick Monaghan's Oct. 20, 2016 Email [12:15]]. As Anoto explained to LeapFrog, offers of compromise to avoid this proceeding were not intended to relieve LeapFrog of its obligations under the Arbitrator's binding Order. Schroeder Decl., Ex. F [Patrick Monaghan's Oct. 20, 2016 Email [12:15]].

1  07-06132-MHP, 2008 WL 2168914, at *4 (N.D. Cal. May 23, 2008) (citing *Ministry of Defense of*
2  *the Islamic Republic of Iran v. Gould Inc.*, 887 F.2d 1357, 1362 (9th Cir. 1989)).

3        **B.**     **Personal Jurisdiction**

4        This Court has personal jurisdiction over Respondent LeapFrog because of its residence
5  within, and significant contacts with, this District.  LeapFrog's global headquarters are located at
6  6401 Hollis Street, Suite 100, Emeryville, CA 94608-1071 (*see* Won Decl., Ex. B at 1-2), which is
7  located in this District.

8        **C.**     **Venue**

9        Venue is proper in this District and Division because, in the absence of for the arbitration
10 agreement, Anoto could otherwise bring an action against LeapFrog in this district with respect to
11 the controversy between the parties based on LeapFrog's residence within this District and Division.
12 9 U.S.C. § 204.

13 **III.**    **INTRADISTRICT ASSIGNMENT**

14       Pursuant to Civil Local Rule 3-5(b) and 3-2(c), this petition should be assigned to either the
15 San Francisco or Oakland Division, because LeapFrog's global headquarters are located in Alameda
16 County.

17 **IV.**    **ARGUMENT**

18       **A.**     **Legal Standard**

19       Review of an arbitral award falling under the Convention is governed by 9 U.S.C. § 207, for
20 which "[t]he district court has little discretion" but to confirm the arbitrator's order.  *Ministry of*
21 *Defense of the Islamic Republic of Iran v. Gould, Inc.*, 969 F.2d 764, 770 (9th Cir. 1992).  Indeed,
22 absent a ground for refusal or deferral under the Convention, the Court "shall confirm the award."
23 *Id.*  "Confirmation under the Convention is a summary proceeding in nature, which is not intended to
24 involve complex factual determinations, other than a determination of the limited statutory
25 conditions for confirmation or grounds for refusal to confirm."  *Zeiler v. Deitsch*, 500 F.3d 157, 169
26 (2d Cir. 2007).  "A district court confirming an arbitration award does little more than give the
27 award the force of a court order."  *Id.*

28

International arbitration awards are "subject only to minimal standards of domestic judicial review for basic fairness and consistency with national public policy." *Industrial Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH*, 141 F.3d 1434, 1440 (11th Cir. 1998). A district court's review of an arbitration award is exceedingly narrow. *Kergosien v. Ocean Energy, Inc.*, 390 F.3d 346, 352 (5th Cir. 2004). The Court "may not reconsider an award based on alleged errors of fact or law or misinterpretation of the contract." *Nauru Phosphate Royalties, Inc. v. Drago Daic Interests, Inc.*, 138 F.3d 160, 164-65 (5th Cir. 1998). "In other words, [the court] must affirm the arbitrator's decision if it is rationally inferable from the letter or the purpose of the underlying agreement." *Executone Info. Sys. v. Davis*, 26 F.3d 1314, 1320 (5th Cir. 1994). "In determining whether the arbitrator exceeded his jurisdiction, we resolve all doubts in favor of arbitration." *Valentine Sugars, Inc. v. Donau Corp.*, 981 F.2d 210, 213 (5th Cir. 1993) (citation omitted).

### B. The Emergency Order Must Be Confirmed Because There Are No Grounds To Vacate, Modify, Or Correct It

When an arbitral award falls under the Convention, a party has three years from the date of the award to apply to a court for an order confirming the award. 9 U.S.C. § 207. Here, the Emergency Order was entered on October 3, 2016 (Won Decl., Ex. B), well within the three-year period.

This Court may not review the merits of the Emergency Order, but must only review whether the respondent carried its substantial burden to establish a defense under the Convention. *China Nat. Metal Prods. Import/Export Co. v. Apex Digital, Inc.*, 379 F.3d 796, 799 (9th Cir. 2004); *see also Ministry of Defense and Support for the Armed Forces of the Islamic Republic of Iran v. Cubic Defense Sys.*, 665 F.3d 1091, 1096 (9th Cir. 2011); *Polimaster Ltd. v. RAE Sys.*, 623 F.3d 832, 836 (9th Cir. 2010). "Under the Convention, an arbiter's award can be vacated only on the grounds specified in the Convention." *Mgmt. & Tech. Consultants S.A. v. Parsons-Jurden Int'l Corp.*, 820 F.2d 1531, 1533-34 (9th Cir. 1987).

Article V of the Convention provides seven grounds to challenge the order. Under Article V(1) of the Convention, the grounds for refusing to recognize or enforce an award are:

> (1) (a) The parties to the agreement ... were ... under some incapacity, or the said agreement is not valid under the law ...; or
>
> (1) (b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings ...; or
>
> (1) (c) The award deals with a difference not contemplated by or not falling within the terms of the submission to the arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration ...; or
>
> (1) (d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties ...; or
>
> (1) (e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.

*LaPine*, 2008 WL 2168914, at *4–5 (quoting Convention Article V(1)).  Under Article V(2) of the Convention, two additional grounds for refusing an award are:

> (a) The subject matter of the difference is not capable of settlement by arbitration ...; or
>
> (b) The recognition or enforcement of the award would be contrary to the public policy of [the country in which enforcement or recognition is sought].

*Id.* (quoting Convention Article V(2)).

Although LeapFrog bears the substantial burden to establish any of these narrowly interpreted defenses, none apply to the Emergency Order.  Indeed, any such argument that LeapFrog had, it brought before the arbitrator who ruled on the issue.  For example, LeapFrog argued in the arbitration that while Anoto's subsidiary, LiveScribe, had authority to issue POs 1-3, it had no authority to be part of the arbitration.  Won Decl., Ex. B ¶ 3.  The Arbitrator's Order squarely rejected LeapFrog's position.  *Id.* ¶ 89.  LeapFrog argued that despite the Agreement's requirement of delivery within 16 weeks, and the fact that for years LeapFrog was able to comply, delivery in 16 weeks is an impossibility.  *Id.* ¶ 71.  Again, the Arbitrator squarely rejected that argument in the Order.  *Id.* ¶¶ 107-108.  Accordingly, the Emergency Order should be confirmed.  LeapFrog's failure to supply Dotpos units pursuant to the Agreement in response to purchase orders issued pursuant to that Agreement is clearly a dispute arising under the Agreement.  The parties agreed to send all

1 disputes arising out the Agreement to arbitration in Sweden pursuant to the Rules of Arbitration
2 Institute of the Stockholm Chamber of Commerce. Won Decl., Ex. C ¶ 26.3.

### C. The SCC Rules Make the Arbitrator's Decision Binding

Anoto brought the current dispute to arbitration and, pursuant to the Rules of Arbitration Institute of the Stockholm Chamber of Commerce, sought appointment of an Emergency Arbitrator and issuance of an emergency order. Won Decl., Ex. B ¶¶ 10-21; Schroeder Decl. Ex. A at 24-27. LeapFrog was given notice of, and participated in, the emergency proceedings and the Emergency Arbitrator issued the Emergency Order on October 3, 2016. Won Decl., Ex. B ¶¶ 10-21. The Emergency Order is "binding," because the rules provide that "*An emergency decision shall be binding on the parties when rendered*" and that, "[b]y agreeing to arbitration under the Arbitration Rules, *the parties undertake to comply with any emergency decision without delay.*" Schroeder Decl., Ex. A at Appendix II, Article 9 (emphasis added).

Anoto respectfully requests that this Court give the Emergency Order the effect of a Court Order so that it may be enforced and so that Anoto may remain solvent during the arbitration.

### D. Anoto Will Provide Notice to LeapFrog's Counsel

In the Swedish arbitration, LeapFrog was represented by outside counsel based in San Francisco, California. Won Decl., Ex. b, at 1. After filing this Petition, Counsel for Anoto will electronically serve LeapFrog's outside counsel and general counsel with copies of all documents filed in connection with the instant petition. Anoto will also serve hard copies of these documents upon LeapFrog's registered agent for service.

### V. CONCLUSION

The parties agreed to participate in binding arbitration in Sweden. Under U.S. law, this confirmation proceeding is not permitted to be used as a mechanism to revisit the Arbitrator's findings and order, which, under the arbitration rules, are binding, and must be complied with "without delay." Schroeder Decl., Ex. A, Appendix II, Article 9. Anoto's business will suffer irreparable harm unless LeapFrog delivers the Dotpos units in the timeframes ordered by the arbitrator. Therefore, Anoto respectfully requests that this Court set this matter for expedited hearing and confirm the arbitrator's Emergency Order.

| | |
|---|---|
| Dated: October 26, 2016 | FINNEGAN, HENDERSON, FARABOW,<br>  GARRETT & DUNNER, LLP |
| | |
| | By: */s/ Jacob A. Schroeder*<br>   Robert F. McCauley (SBN 162056)<br>   robert.mccauley@finnegan.com<br>   Jacob A. Schroeder (SBN 264717)<br>   jacob.schroeder@finnegan.com<br>   FINNEGAN, HENDERSON, FARABOW,<br>    GARRETT & DUNNER, LLP<br>   3300 Hillview Avenue<br>   Palo Alto, CA  94304-1203<br>   Telephone:(650) 849-6600<br>   Facsimile: (650) 849-6666<br><br>   Attorneys for Petitioners<br>   Anoto AB, Livescribe, Inc. |